JOSÉ JUAN BARDEGUEZ, Plaintiff and Appellee, *v.* RITA MARÍA DE LOS ANGELES BARDEGUEZ, Defendant and Appellant.

No. 6535. Argued April 10, 1935.—Decided June 21, 1935.

*Pedro E. Anglade* for appellant.   *F. Beiró Rovira* for appellee.

MR. JUSTICE CÓRDOVA DÁVILA delivered the opinion of the court.

On May 25, 1918, Juan Bardeguez y Guibbs, a widower, 61 years of age, not having had either legitimate or legit-

imated children, or acknowledged natural children, adopted the plaintiff, José Juan Bardeguez, and the defendant, Rita María de los Angeles Bardeguez, by a public deed executed before Notary Celestino Domínguez, as his legitimate children, authorizing them to bear his surname and granting to them both the rights pertaining to legitimate children. At the time of the adoption plaintiff was 23 years old and defendant 25. The adoption was duly accepted by both plaintiff and defendant, who prior thereto had borne the surname Gutiérrez. The aforesaid adoption was recorded in the Register of Guayama where the plaintiff was born, and in the Register of Ponce where the defendant was born, after approval by the District Court of Guayama. The adopting parent, Juan Bardeguez y Guibbs, having fallen ill and being in imminent danger of death, and being aware of that fact, made a verbal will, by which he designated the defendant, Rita María de los Angeles Bardeguez, as the sole and universal heir of all his properties. This will was approved on June 2, 1930, by the District Court of Guayama in a civil proceeding brought before said court for protocolization of a will executed in imminent danger of death, such will being thereafter filed in the protocol of notary Pedro E. Anglade of that city, as appears from public deed No. 32, executed on June 5, 1930. The said Juan Bardeguez y Guibbs, who upon his death left both real and personal property, failed to mention his adopted son José Juan Bardeguez in the designation of heirs made in such will, without having disinherited him expressly. Plaintiff contends that he has a right to inherit, as a forced heir of his adopting father, one-half of all his properties, the other half belonging to defendant. Based on these facts and upon the nullity and nonexistence of the designation of heirs made in favor of defendant, plaintiff prays that he be declared a forced heir together with his sister, and that he may have such other and further relief as is proper under the pleadings.

.The essential allegations of the complaint have been proved by the admissions of the defendant, taken in conjunction with the evidence introduced at the trial.

The court below rendered judgment holding null and void the designation of heirs made in favor of the defendant Rita María de los Angeles Bardeguez by Juan Bardeguez y Guibbs, and holding further that not only must the plaintiff José Juan Bardeguez but also the defendant Rita María de los Angeles Bardeguez, as adopted children of Juan Bardeguez y Guibbs, be considered as forced heirs entitled to an equal participation in the inheritance from their father, and holding moreover that the properties of the aforesaid decedent should pass by intestate succession, imposing costs on the defendant, who, feeling aggrieved by that judgment, took the present appeal.

█ In the first place, it is urged that the district court erred in admitting in evidence without proper identification, certain records constituting secondary evidence, the primary evidence which ought to have been offered being the deed of protocolization of the will executed before Notary Pedro E. Anglade.

The plaintiff offered in evidence copies found in the files of the District Court of Guayama of the proceedings had before that court in which the statements made by Juan Bardeguez y Guibbs while in fear of death were held to constitute a will. The defendant objected, contending that the deed of protocolization ought to have been presented. The clerk of the district court testified that he had the copy in question in his files, since the originals were delivered to the notary for filing in his protocol. These originals were delivered to the notary by order of the court, which directed that a literal copy of all the documents be kept in the files of the court. In the record there appears a receipt from the notary Anglade stating that he had left a copy of the papers on file with the court. Even in the event that the copy of these documents filed in court might not constitute the best evi-

dence, we do not see how their introduction in evidence could have prejudiced the defendant, since she expressly and definitely admitted in her answer the second, third, and fourth averments of the complaint, in which the adoption by Juan Bardeguez y Guibbs of the parties litigant, with their consent, and in which the statements made by him which were held by the District Court of Guayama to be his will, are set forth. The fourth allegation of the complaint, admitted by defendant, reads as follows:

"The aforesaid adopting father of the parties in this proceeding, Juan Bardeguez y Guibbs, having fallen seriously ill and being in imminent danger of death, and being aware of that fact, made a verbal will in which he designated the above-named defendant as his sole and universal heir to all of his properties, and said will was approved by this Honorable Court on June 2, 1930, after a hearing had in Civil Case No. 8988, being a proceeding for protocolization of a will executed in imminent danger of death, and which will was accordingly filed in the protocol of Pedro E. Anglade a notary of this city, as appears from public deed No. 32, executed on June 5, 1930."

In order to establish these facts, which were admitted by the defendant, the plaintiff offered a copy of the record on file in the District Court of Guayama. This assignment of error must be overruled.

■ In the second place, it is contended that the court erred in dismissing the motion setting up a misjoinder of causes of action, and to strike. According to the appellant, two causes of action are set up: The nullity or invalidity of the designation of heirs and a claim for inheritance. The properties left upon the death of Juan Bardeguez y Guibbs are described in the complaint, and it is prayed that the designation of heirs be held void and without effect, and that both litigants be held to be forced heirs of the deceased Juan Bardeguez y Guibbs, each entitled to one-half of the estate, and that such other relief be granted as might be proper under the pleadings. The action is based upon the preteri-tion by the testator of one of the heirs. The participation

of plaintiff in the estate is an inevitable consequence of any judgment which might be entered holding such preterition invalid. The misjoinder of causes of action alleged by defendant does not exist.

■■ The third and fourth assignments of error are to the effect that the judgment is contrary to the law and the evidence. Appellant maintains that it was the intention of the testator to leave all his property to defendant, that this intention was deliberate and final, and that such intention ought to be respected. It is argued, moreover, that nowhere in the Civil Code is it provided that adopted children have a right to inherit from the adopting parent, citing the Act of March 9, 1905, section 1 of which defines who are forced heirs.

The opinion rendered by this court in *Ex parte Ortiz*, 42 P.R.R. 339, 344, recognizes the right of adopted children to take as forced heirs. In that case the petitioners prayed that they be held to be the sole and universal heirs of their adopting mother Rosa Lluberas Rodríguez. Arturo Lluberas Rodríguez objected, maintaining that he had been designated as the sole and universal heir of the aforesaid Rosa Lluberas Rodríguez in an holographic will executed by her. The district court decided in favor of the adopted daughters, The petitioners were held to be the sole and universal heirs of Rosa Lluberas Rodríguez, the will executed in favor of Arturo Lluberas Rodríguez being consequently void. This court affirmed the judgment appealed from in an opinion written by Mr. Justice Wolf, from which we take the following extract:

"Adoption statutes were passed in various States of the United States. Previous laws referred to the distribution of the estate or other matters giving certain rights to the 'issue' or 'descendants' of a decedent. The courts have generally held that adopted children should then be considered as issue or descendants although it is clear that originally neither of these words could mean anything but offspring. *In re Newman*, 75 Cal. 213; *Batchelder* v. *Walworth*, 37 L.R.A. (N.S.) 849, cases and history; *Riley* v. *Day*, 44 L.R.A. (N.S.) 296; *Ross* v. *Ross*, 129 Mass. 243; *In re Hebb's Estate*, 134 Wash.

424; 1 R.C.L. 619; 11 C. J. 752; 1 C. J. 1398, section 128. All these authorities bear on the main proposition. Similarly, in Puerto Rico where the statute gives a right of adoption, it is no great stretch to say that the Legislature meant that the person so adopted should fall within the definition of forced heir. Subject to restriction the status of a legitimate child is conferred.

"As we have said, section 200 gives rights by itself and the subsequent sections only place certain limitations on such rights, which include under section 186 the right to inherit. We consider that an adoption statute should be construed liberally in favor of an adopted child, as has been done in other jurisdictions. *Bilderback* v. *Clark*, 9. A.L.R. 1622; *In re Hebb's Estate*, 134 Wash, 424, 427; 1 R.C.L. 595."

This court in its opinion reviewed the statutory provisions in force in Puerto Rico with respect to adoption, and reached the conclusion that an adopted child is in the same position as a legitimate child of the adopting parent, and must be considered as a forced heir, subject to the limitations imposed by law.

The parties herein are adopted children of Juan Bardeguez y Guibbs, who died while widowed, leaving neither ascendants nor descendants. Mr. Juan Bardeguez, finding himself in danger of death, expressed his wish to make a will to several persons, who heard his statements and appeared as witnesses before the District Court of Guayama, which court, upon all the evidence, found that the statements of the aforesaid Juan Bardeguez y Guibbs constituted his will. The testator, according to a summary of the testimony before such court, stated "that he was leaving everything he had to his adopted daugther, Rita Bardeguez, whom the testator wished to be his heir, and that the testator had no other heirs, thus rewarding the said adopted daughter for her good treatment of him, since she had asked towards the testator better than if she had been his own daughter."

The preterition of the plaintiff is plain. The words of the testator leave no room for doubt. The adopted son receives nothing in the will by any provision of the testator, who moreover added that "he had no other heirs."

■■ In arguing the third assignment, appellant maintains that the District Court of Guayama has erroneously declared in its judgment that plaintiff has the same rights to the estate of the decedent as defendant. In the latter's view, section 742 of the Civil Code has not been correctly interpreted, since the testator has clearly expressed his intention to leave the property of which he could dispose by will, under the law, to his daughter Rita. It is argued that the testator in stating that he desired that all his property should go to his daughter, did so in order that she might receive a betterment (*mejora*), devising to her the one-third legal portion at his free disposition, and designating her as heir to the other legal portion, as is provided by our laws with respect to the legal rights of any other heir.

In rendering its judgment, the court below goes upon the ground that the designation of heirs is entirely void, following the opinion of Manresa, who in turn cites from the judgments of the Supreme Court of Spain of June 17, 1908 and Frebuary 27, 1909, setting forth the same proposition and construing section 814 of the Spanish Civil Code, equivalent to section 742 of our code. 6 Manresa, 6th ed., pages 352, 353. But is this section applicable to adopted children? We have here a fundamental question to be decided in order to determine the share to which the plaintiff is entitled in the estate left upon the death of his adopting father.

The first paragraph of said section 742 reads as follows:

"The omission of any or of all the lawful heirs in the right line whether they be living at the time of the execution of the will or whether they are born after the death of the testator shall annul the institution of an heir, but trusts and advantages or extra portions shall be valid whenever they are not inofficious."

The preceding section refers exclusively to forced heirs in the direct line (*línea recta*). An adopted child is not such an heir, and although according to the code he has the rights of a legitimate child, without prejudice to the rights of the forced heirs, which continue to be the same as though the

adoption had not been made, nevertheless, we do not believe that these provisions have the effect of including the adopted child among the forced heirs in the direct line, who are the only ones who may annul the designation of heirs to the extent provided in section 742 of the Code.

In the case of *Ernst* v. *Rivers,* 123 N. E. 93, 95, decided by the Supreme Court of Massachusetts, it is said that ''it is plain that 'lineal heirs' means descendants.''

The *''Enciclopedia Jurídica Española''* expresses with greater clarity the legal meaning of that term. From that work (vol. 21, p. 457) we copy the following:

''Line is the series or order of persons united by the bonds of kinship, by reason of descent from the same root or stock. 'Orderly relationship of persons who spring one from another like a chain, descending from the same stock, and who bear to each other degrees of relationship.' (L. 2., tit. VI, p. 4a.)

''It has its origin in relationship, the proximity of which is determined by the number of generations, or by the distance intervening between the nearest ancestors. Just as a geometrical line is a series of points, or the trajectory which one of them describes, so in law, following the process of procreation, each of the generations constitutes a degree, and the series or sum of them, the line.

''In Rome, degrees of relationship were computed differently, according to the line: In the direct line by counting the generations, or rather by counting the persons intervening between the ancestors in question and subtracting one. Origin from the same source was the basis of relationship. When this origin was direct, it was said that they were related in the direct line, and when the kinship arose from a common stock, but by intervention of different progenitors, the transverse line was then formed. And when the progenitors were the same, the relationship was called bilateral, and the brothers and sisters so born were called *germanos.* And unilateral, when there was only a single common progenitor. Descent from a common mother gave rise to a relationship of brothers by the mother's side; from a common father, to that of consanguinity.''

As may be seen, *line* in the civil law means a series or order of persons bound together by a natural relationship having its origin in a community of blood, the proximity

of which is determined by the number of generations. When descent is direct, the kindred are in the direct line, linked by common blood and by no other relationship.

Under the subtitle, *"Classes of Relationship Under Present Law,"* the *"Enciclopedia Jurídica Española,"* volume 24, page 305, says:

"Relationship admits of a fundamental classification into *natural* and *civil* or *legal,* according as it has its origin in the natural circumstance of common blood, or in the purely legal phenomenon of adoption.

"Natural relationship, called in Latin *Consanguinitas, est vinculum personarum ab eodem stipite propinquo descendentium, vel quarum una descendit ab alici carnali propagtione* (5). The Partidas define it as: 'relationship or kinship of related persons who descend from a common stock (6).'

"The old Roman distinction between agnation and cognation is losing its original force in the modern law, by the modifications which the course of time has brought to the family organization.

"Natural kinship which originates in the community of blood has its primary basis in the family, constituted by marriage, which is designated either as a legitimate or mixed natural relationship; but it may also arise from an extra-legal union, and we then have the purely natural or illegitimate relationship, which exists between natural children and their descendants and their father or mother and their other offspring."

The adopted child may not, therefore, be considered as a forced heir in the direct line, since the connection between the adopted child and his adopting parent is quite different. Since section 742 may not be applied in such case, we think, in view of the fact that we are dealing with an adopted child, that we may turn to section 741, according to which "a testator can not deprive the heir of his legal portion, except in the cases expressly fixed by law." This is not a case in which the testator has left the forced heir less than the legal portion belonging to him. The legal portion of the heir has not been diminished by any testamentary disposition, and accordingly sections 743 and 744 of the Civil Code are inap-

plicable. In the instant case, the plaintiff as an heir has been completely ignored. The testator appears to have disposed of his estate in favor of his daughter Rita, disregarding the legal portion belonging to plaintiff. That being so, it is plain that a judgment must be entered annulling the will in so far as it devises the legal portion belonging to the omitted heir.

It is necessary, however, to determine what part of the estate plaintiff is entitled to as his legal portion. According to section 737 of the Civil Code, the legal portion of legitimate children and descendants consists of two-thirds of the hereditary estate of the father and of the mother. Nevertheless, the parents may dispose of one of the two thirds forming the legal portion in order to apply it as a betterment to their legitimate children or descendants. The remaining third shall be at their free disposal. The section just cited divides the hereditary estate into three parts, each having a separate and independent character: one forming the strict legitime of the descendants; another which the testator may dispose of freely; and yet another which the testator may dispose of as a betterment, but which may never exceed one-third of the estate. 6 Manresa 407. The result is that in addition to the freely disposable one-third, a testator may dispose of another third as a betterment. In the instant case Juan Bardeguez y Guibbs stated that he bequeathed everything that he owned to his daughter Rita Bardeguez. The words of the testator show clearly his intention to leave all his property to this heir. In order that his intention may be carried out so far as is possible, all the property which the testator had power to dispose of under the law ought to be assigned to his daughter. There is no doubt that he could dispose of the one-third which is freely disposable, nor is there any doubt that he could dispose of another one-third as a betterment. Manresa says that section 813 of the Spanish Civil Code, equivalent to section 741 of our code (1930 ed.), refers only to the strictly legal portion. This view seems to

us correct, since this is the only portion of which testator may not deprive a forced heir. If the testator has stated clearly and unequivocally that he leaves all his property to one of the heirs, omitting another, it seems reasonable that from such properties there should be excluded only the strictly legal portion, which is the only part of the estate of which the testator cannot deprive the legal heir, and that the remainder should go to the favored heir under the will of the testator.

Section 755 of the Civil Code provides that a bequest or legacy made by the testator to one of his children or descendants shall not be considered as a betterment, except when the testator has expressly declared such to be his intention, or when it can not be included in the portion he can freely dispose of. The result is that there are two situations in which the bequest or legacy may be considered as a betterment: when the testator has expressly declared such to be his intention, or when it cannot be included in the portion of which the testator can freely dispose. In the instant case the testator disposed of all his property to his daughter. The whole cannot, naturally, be included in the portion of which the testator can freely dispose. Removing from consideration the strictly legal portion belonging to plaintiff, it seems reasonable that that part which may not be included in the portion as to which the testator had free disposition, belongs to the daugther as a betterment. If the testator sought to bestow all his property upon his daughter and so exceeded the powers conferred upon him by law, it must be agreed that he went much further than is permitted, exceeding the betterment and invading the prohibited field of the strictly legal portion. If this is the case, and his intention appears to have been clear and express, his last will must be respected in so far as it is possible, by annulling only so much of the will as affects the legal portion of the omitted heir.

In commenting upon section 828 of the Spanish Civil Code, equivalent to section 755 of our code, Manresa says:

"We believe that since section 828 is special, it must be applied in cases in which it is applicable with preference over section 820, which is general. 'When it cannot be included in the portion he can freely dispose of,' says that section. The question is, consequently, a simple one, and for that reason we say that there is no real contradiction. May the legacy left to the descendant be included in the freely disposable portion, taking into account the other legacies, where proper? Whenever it may not be so included, it is understood that the testator intended to give a betterment. The section is based upon the presumed will of the testator; it is not intended that the section shall deprive other legatees of what was voluntarily bequeathed to them so long as it may be included in the third, but that, since the testator may dispose of another third among his descendants, it must be presumed that he used that power. Otherwise, the freely expressed will of the testator as to the disposition of the part freely disposable would be overriden for the benefit of the legal heirs, who in the face of such will may insist only upon the strictly legal portion.

"A clearer case of the application of section 828 is as follows: I leave a third of my estate to Juan, Pedro, and Antonio; I leave another third to my son José, and as to the remainder I designate all my children as heirs. May it be contended that because there is not express reference to a betterment that both legacies should be taken together to reduce to one-sixth that of the strangers? Does not the intention of the testator to give his son José a betterment appear clearly? There is a case identical with that just set forth, although there was no mention of thirds. A testator bequeathed 6,000 to strangers, which could be so disposed of, and he left 6,000 to his descendants, which fitted into the third corresponding to betterments. That is what the testator wanted; could he do it? Can it be carried out? It is carried out and that is sufficient." 6 Manresa 437.

The judgment appealed from must be reversed and another rendered instead annulling the will insofar as it disposes of the strictly legal portion to which plaintiff is entitled, without special pronouncement of costs.

Mr. Justice Aldrey dissented.